**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>KENNETH BERKLAND,<br><br>                             Debtor | Chapter 11<br>Case No. 17-10821-FJB |

**MEMORANDUM OF DECISION ON**
**DEBTOR'S MOTION FOR DETERMINATION OF EXTENT OF SECURED CLAIM**

By the motion before the Court, chapter 11 debtor Kenneth Berkland ("the Debtor") seeks a determination, as against the holder of the first position mortgage on his principal residence ("the Mortgagee"), (i) that the fair market value of the mortgaged real property is $850,000, (ii) that consequently the Mortgagee's claim, which exceeds $1,400,000, is a secured claim only to the extent of $850,000.00, and (iii) that 11 U.S.C. § 1123(b)(5) does not prohibit the debtor from modifying the rights of the holder of the secured claim through a chapter 11 plan.[1]  The Mortgagee, through its loan servicer, Specialized Loan Servicing LLC ("Specialized"), has objected to the motion.[2]  The parties have now agreed on the property's fair market value and submitted the remaining issue for adjudication on a statement of agreed facts. Their dispute is now limited to the single issue of whether § 1123(b)(5) prevents the modification of the Mortgagee's rights.  This memorandum sets forth the Court's findings of fact and conclusions of law.  On the basis of these, the Court now determines that § 1123(b)(5) does not prohibit the debtor from modifying the rights of the Mortgagee.

---

[1] The Debtor has not yet filed a plan.
[2] The relevant proof of claim identifies the claimant/mortgage holder as Citigroup Mortgage Loan Trust Inc., Asset-Backed Pass-Through Certificates, Series 2007-AMC1, U.S. Bank National Association, as Trustee ("the Mortgagee"); the proof of claim was filed for the Mortgagee by Specialized.

**PROCEDURAL HISTORY**

After a preliminary hearing on this motion, the Court scheduled an evidentiary hearing and, in conjunction therewith, required the parties to submit a joint pretrial memorandum. They did, but in it they indicated that they had agreed on all of the facts, as set forth in a Joint Statement of Facts they filed with the Joint Pretrial Memorandum. They further stated that the scheduled evidentiary hearing was unnecessary, and they asked that it be canceled. As requested, the Court canceled the evidentiary hearing, indicated that the matter was deemed submitted on the Joint Statement of Facts, and set a deadline for the parties to submit briefs on the remaining legal issue. On the deadline, each party did file a brief, and together they filed what they entitled an Updated Statement of Facts. They have not withdrawn the original statement of facts. The statements of facts, original and updated, are identical except in two respects: (i) the updated includes one additional agreed fact: specifically, that the fair market value of the Property is $912,500.00; and (ii) the original includes three exhibits—a loan application, a loan approval summary, and an occupancy agreement—but the updated includes none. I take the agreed facts that constitute the record in this matter to include all the recited facts in the updated statement and, because the original was not withdrawn, the three exhibits attached to the original.

As exhibits to his memorandum, the Debtor submitted four photographs, and he makes reference to these in his arguments. Likewise, as an exhibit to its memorandum, Specialized attached (in addition to the three exhibits to the parties' Joint Statement of Facts) a document that it says is the mortgage given by the Debtor to the mortgagee's predecessor in interest. Notwithstanding these submissions, the four photographs and the alleged mortgage are not part of the factual record in this case, and the Court will not consider them in adjudicating this matter.

**FINDINGS OF FACT**

    **Agreed Facts**

The parties have stipulated and agreed to the following facts, which I reproduce here *verbatim*:

1.    On June 30, 1998, Debtor became the owner of property located at 24 Old Town Road, Walpole, MA 02081 (the "Property") by virtue of a Quitclaim Deed recorded in the Norfolk County Registry of Deeds on June 30, 1998 in Book 12626 at Page 445.

2.    On or about September 18, 2006, Debtor applied for a loan with Argent Mortgage Company, LLC in the amount of $850,000.00.

3.    The Loan Application indicates the following:

    a.    The Property had one (1) unit;

    b.    The purpose of the loan was a refinance; and

    c.    The Property would be Debtor's primary residence.

4.    According to a Loan Approval Summary prepared by Argent Mortgage Company, LLC the Property is described as an owner occupied single family residence.

5.    Based upon the Loan Application, on September 21, 2006 Argent Mortgage Company, LLC extended a loan to Debtor in the amount of $850,000.00 (the "Loan") as evidenced by a promissory note of even date and secured by a first priority mortgage recorded in the Norfolk County Registry of Deeds on September 27, 2006 in Book 24111 at Page 465 (the "Mortgage").

6.    Debtor obtained this financing through a mortgage broker. Debtor expressly stated the purpose of the refinancing was to pay off the existing mortgage and to use the excess funds toward the approximately 1,600 square foot addition suite described in clause 7.[3]

---

[3] I understand this reference to an "addition suite described in clause 7" to be a reference to the Addition mentioned in paragraph 8 of this recapitulation of the agreed facts. The parties' Joint Statement of Facts included two paragraphs numbered 4, which error I have not reproduced, so that what was paragraph 7 in that document appears here as paragraph 8.

3

7. In connection with the Loan closing on September 21, 2006 Debtor executed an Occupancy Agreement indicating that he intended to occupy the property as his primary residence and acknowledging that Argent Mortgage Company, LLC relied upon this representation in making the Loan.

8. In the spring of 2007 Debtor began construction of an addition (the "Addition") in the Property, which concluded in the fall of 2007.

9. The Addition was constructed for the purpose of providing a residence for Debtor's mother and father in law and is described as an approximately 1,600 square foot space with two bedrooms, a living room, a kitchen, a full bath and a separate entrance.

10. Debtor's mother and father in law resided in the Addition from completion of construction to approximately 2014. There was no written lease agreement with Debtor's mother and father in law.

11. Debtor's brother in law, Ronald Lampert, has resided in the Addition from 2014 to the present and pays $300.00 per month in rent inclusive of all utilities. There is no written lease agreement with Ronald Lampert.

12. Movant is the servicer for U.S. Bank National Association as Trustee for the Certificate Holders of Citigroup Mortgage Loan Trust, Inc. Asset-Backed Pass Through Certificates Series 2007-AMC1 ("U.S. Bank"). U.S. Bank is the current holder of the Mortgage by virtue of an assignment of mortgage recorded in the Norfolk County Registry of Deeds on October 16, 2012 in Book 30564 at Page 130.

13. The parties agree that the fair market value of the Property is $912,500.00.

**Further Findings**

14. In material part, the Loan Occupancy Agreement referred to in paragraph 7 above states as follows:

    The undersigned Borrower(s) [the Debtor] of the above captioned property [the Property] understand that one of the conditions of the loan is that the Borrower(s) occupy the subject property and Borrower(s) do hereby certify as follows:

1. Borrower intends to occupy the property as Borrower's primary residence.

2. Borrower intends to occupy the property during the 12 month period immediately following the loan closing as the primary residence of the Borrower (i.e., the property will be "owner occupied").

3. If Borrower's intention changes prior to the loan closing, Borrower agrees to notify Lender immediately of that fact.

4. Borrower understand that Lender may not make the loan in connection with subject property without this Occupancy Agreement.

5. Borrower acknowledges Lender has relied on the Borrower's representation of occupancy in securing said loan, the interest rate or funding said loan.

15. The Loan Application further indicates that the number of units of the Property is one.

**JURISDICTION**

This is a proceeding to determine the value of a secured claim for purposes of a plan of reorganization and to determine whether the claim may be modified in a chapter 11 plan. These matters arise under the Bankruptcy Code and in a bankruptcy case and therefore fall within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by a standing order of reference, see L.R. 201 (D. Mass.), referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). They are core proceedings within the meaning of 28 U.S.C. § 157(b)(1). 28 U.S.C. § 157(b)(2)(B) and (L) (core proceedings include confirmations of plans and the allowance or disallowance of claims). The bankruptcy court accordingly has authority to enter final judgment on the motion.

**POSITIONS OF THE PARTIES**

In relevant part, § 1123(b)(5) of the Bankruptcy Code states that "a plan," meaning a plan under chapter 11, "may . . . modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence[.]" 11 U.S.C. § 1123(b)(5). The language of this subsection is identical to a parallel provision in chapter 13, at 11 U.S.C. § 1322(b)(2)

5

("the plan may . . . modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence").  With respect to § 1322(b)(2), the Court of Appeals for the First Circuit has held "that the antimodification provision of § 1322(b)(2) does not bar modification of a secured claim on a multi-unit property in which one of the units is the debtor's principal residence and the security interest extends to the other income-producing units." *Lomas Mortgage, Inc. v. Louis*, 82 F.3d 1, 7 (1st Cir. 1996).   The parties agree, as does the Court, that *Lomas* should be viewed as controlling for purposes of construing the meaning of the same language in § 1123(b)(5), especially since, in *Lomas*, the Court of Appeals relied heavily on the legislative history of § 1123(b)(5) to reach its holding as to §1322(b)(2).

The Debtor argues that *Lomas* governs here. He argues that the antimodification clause does not apply because, as in *Lomas*, the Property is a multi-unit property, one unit of which is income producing, and the Mortgagee's security interest extends to all units.

Specialized makes essentially three arguments in response.[4]  It first argues that *Lomas* can be distinguished in four respects:  that the property was not, at the time the mortgage was extended, a multi-unit property; that, unlike in *Lomas*, the mortgage did not include "a one-to-four family rider" and an assignment of rents; that the separate unit has never been occupied by "tenants" other than members of his extended family; and that during the occupancy of the in-law unit by the Debtor's senior in-laws, no rent was charged, and that the Debtor's brother-in-law now occupies the unit for "a mere $300.00 per month," a "nominal" sum, such that the in-law apartment cannot fairly be considered a profit-oriented commercial endeavor.  Second, Specialized argues, in reliance on case law from other jurisdictions, that the appropriate time for determination of whether a claim is subject to the anti-modification exception is not the beginning of the bankruptcy case but the time when the loan was

---

[4] The three arguments I discern, though all present, are not separately stated or differentiated in Specialized's brief but rather are threads in an undifferentiated mass.

6

originated; Specialized argues that only by using the origination date can the exception serve its intended purpose, "to give special protection to home lenders in order to encourage the flow of capital into the home lending market." If lenders could not rely on the character of the property as of the time of lending, this purpose would be defeated. Third, Specialized suggests that the Debtor, having made representations in the loan application process and at the time of closing that he intended to occupy the property as his residence, and having further acknowledged the lender relied upon that representation of intent, should be estopped from contending that the property is something other than his principal residence. This third argument is undeveloped, did not appear in Specialized's objection to the present motion, and was mentioned for the first time only in the brief that Specialized filed after the parties' submission of their Joint Statement of Facts. The Debtor had no advance notice of it and no opportunity to answer it.

The Debtor responds to the first two of these arguments. He points out that the addition is in fact a separate living unit and that this makes the Property a multi-unit dwelling for purposes of *Lomas.* He concedes that he could get more rent for the unit, the discounted rate being an accommodation to a disabled relative, but also maintains that $300 per month is real rent and hardly nominal. Lastly he contends that although case law in other Circuits would determine the applicability of the anti-modification clause as of the date of lending, case law in this district, and the correct position, is that the date of the bankruptcy petition controls.

**DISCUSSION**

In § 1123(b)(5), the antimodification provision is an exception to the general rule that a plan may modify the rights of holders of secured claims. A secured creditor claiming that the exception precludes application of the general rule therefore bears the burden of proving the applicability of the exception, that its claim is "a claim secured only by a security interest in real property that is the debtor's principal residence[.]" 11 U.S.C. § 1123(b)(5). Here, however, it is undisputed that the Property

7

is the Debtor's principal residence, and the only question is whether the Property also includes an income producing unit, such that the Mortgagee's secured claim is not secured "only by" a security interest in real property that is the debtor's principal residence.  Where the property is undisputedly the debtor's principal residence, the burden of adducing evidence of this additional relevant fact is on the debtor.

On the basis of the agreed facts, I find that as of the date of the Debtor's bankruptcy petition, the Property included an income-producing unit and was not solely the Debtor's principal residence. The record establishes that the Addition discussed in paragraphs 8-11 of the findings above was a separate, self-enclosed residential unit, not merely shared space in the Debtor's living unit, such as a spare bedroom.  It includes approximately 1,600 square feet of space, with two bedrooms, a living room, a kitchen, a full bath, and a separate entrance.  In addition, the record establishes that this unit was being rented, and thus producing income, of $300 per month.  Even if this rate is below-market (as to which the parties have adduced no evidence), he is correct that it is income, not a *de minimis* or nominal sum.  In view of the unit's income producing nature, I further conclude that, under *Lomas*, it is of no moment that the rental is to a member of the Debtor's extended family.  It matters only that the unit is income-producing.  I further find it irrelevant that, unlike in *Lomas*, the mortgage given by the Debtor to the Mortgagee did not include "a one-to-four family rider" and an assignment of rents.  These are characteristics of the mortgage, not of the Property.  For these reasons, I conclude that Specialized's effort to distinguish *Lomas* fails.

This brings the Court to the issue of the date as of which the applicability of the antimodification provision is to be determined, an issue *Lomas* did not address and for which there is no circuit-level guidance in this circuit. There is a split of opinion among courts on this issue.  See *Benafel v. OneWest Bank (In re Benafel)*, 461 B.R. 581, 590 (B.A.P. 9th Cir. 2011), surveying cases pro and con. I am satisfied that the better position is that the applicability of the antimodification provision is determined as of the

8

commencement of the bankruptcy case, and I follow those cases that so hold. *Id*. at 588 and cases cited) (construing §1322(b)(2)); *BAC Home Loans Serv., LP v. Abdelgadir (In re Abdelgadir)*, 455 B.R. 896, 898 (9th Cir. BAP 2011) (construing § 1123(b)(5)).  The majority includes apparently every bankruptcy court in this circuit to have addressed the issue. See *In re Leigh*, 307 B.R. 324, 331 (Bankr. D. Mass. 2004) (Boroff, J.) (the relevant time for determining the extent of a secured creditor's collateral for § 1322(b)(2) purposes is the commencement of the case); *In re Schultz,* 2001 WL 1757060 at *2 (Bankr. D. N.H. 2001) (Deasy, J.) (the Court should look to the facts and circumstances existing on the petition date)*; In re Lebrun,* 185 B.R. 665 (Bankr.D.Mass.1995) (Feeney, J.) (same); *In re Wetherbee*, 164 B.R. 212, 215 (Bankr. D. N.H. 1994) (Yacos, J.) (same); *In re Boisvert*, 156 B.R. 357, 359 (Bankr. D. Mass. 1993) (Feeney, J.) (same); *In re Churchill*, 150 B.R. 288, 289 (Bankr. D. Me. 1993) (Goodman, J.) (applying the "plain meaning" rule and holding that the petition date controls).  There is no appellate level guidance in this circuit. The BAP case that Specialized here cites as authority for its position in fact expressly found it unnecessary to address the issue.  *GMAC Mortgage Corp. v. Marenaro (In re Marenaro)*, 217 B.R. 358, 360 (B.A.P. 1st Cir. 1998) (declining to set forth a rule regarding when to look at the status of the property).

Only this view is consistent with the language of the antimodification provision. That language focuses on whether the mortgagee's claim is "a *claim* secured only by a security interest in real property that *is* the debtor's principal residence." § 1123(b)(5) (emphasis added).  Both emphasized words, "claim" and "is," point to the present, not the past.  "Claim" is a concept that has relevance only in the bankruptcy case; prepetition rights become "claims" in bankruptcy. *In re Wetherbee*, 164 B.R. at 215 ("A "claim" in bankruptcy arises at the date of the filing of the petition. [Citations omitted.] Therefore, only if a claim is secured by the debtor's principal residence at the time of the bankruptcy petition is the debtor prohibited from modifying the creditor's interest under the plain language of 11 U.S.C. § 1322(b)(2)."). More importantly, the provision asks whether the real property in question "is" the

9

debtor's principal residence, not whether it was the principal residence when the security interest first arose. *In re Churchill*, 150 B.R. at 289 ("the statute will be applied as written, in the present tense. Claims secured only by a security interest in real property which *is* the debtor's principal residence, at the time of filing, may not be modified." (Emphasis in original.)). Given the clarity of the statute on this issue, there is no reason to have recourse to legislative intent, which, in the end, tells us only the legislature's purpose in enacting the antimodification provision but not precisely how the legislature saw fit to effect that purpose. See *Lomas*, 82 F.3d at 6, where the Court of Appeals surveyed carefully the legislative history of both § 1123(b)(5) and § 1322(b)(2). On the latter question, by far the clearest indication is the language of the statute.

The cases that Specialized cites for its position, that the date of the loan should govern, provide little support for that position. The most prominent is *Scarborough v. Chase Manhattan Mortgage Corporation*, 461 F.3d 406, 412 (3rd Cir. 2006), but in that case the court offered little discussion of the issue and no reason for disregarding the plain language of the statute. Likewise in *In re Proctor*, 494 B.R. 833, 840 (E.D.N.C. 2013), the Court surveyed the case law and then indicated that it would apply § 1123(b)(5) "with reference to the mortgage documents, not the petition date," *id*., with no discussion of cause for disregarding the plain language. Specialized also relies on *Abdelgadir*, 455 B.R. at 898, but that decision it stands for precisely the opposite position from the one that Specialized invokes it to support. And the last case that Specialized invokes is *Hoffman v. Ocwen Loan Servicing*, 2016 WL 5791406 (D. N.J. 2016), which was not for publication and merely cited and followed *Scarborough*.

I am therefore satisfied that the date of the bankruptcy filing controls.

Specialized makes one further argument: essentially, that even if the date of the bankruptcy filing controls, and even if as of that date the Property was a multi-family and included a rental unit that brought it within the scope of *Lomas*, the Debtor should be estopped from taking that position because he made contrary representations to the lender in the mortgage application process and at closing. For

10

three reasons, I find no merit in this defense.  First, it is presented here as an affirmative defense but was raised for the first time only after the parties' opportunity for submitting evidence and indeed after the Debtor's opportunity for submitting its arguments. It is therefore deemed forfeited, and its consideration at this juncture would be unfair and inconsistent with due process.  Second, the argument is barely announced and is developed almost not at all; certainly there is no mention of the precise type of estoppel being relied on—promissory or equitable (judicial appears to be out of the question)—and no citation of supporting law or of the defense's requirements.

      Third, on the merits, the facts that Specialized relies upon do not support an estoppel of any kind.  The facts are that the Debtor was asked for and made representations about his then-existing intent, and he responded that his intent was to occupy the property as his primary residence.  There is no indication or even suggestion that this response was false, untruthful, or deceitful.  There is no indication that the Debtor was asked to or did promise not to change his intent, not to use the property as anything other than his residence, not to add a separate unit to it, and not to use any portion of it as rental property.  And there is no inconsistency between a debtor's occupying the residence as his or her primary residence—which I understand the Debtor has continued to date to do—and that debtor's leasing out a portion of the same property for income.  One and the same property can be both the owner's principal residence and an income-producing property.  In short, Specialized has submitted no evidence of a representation that is inconsistent with the position he now advances, much less of a representation that should estop him from now advancing it.

**CONCLUSION**

For these reasons, a separate order will enter declaring that 11 U.S.C. § 1123(b)(5) does not prohibit the Debtor from modifying the rights of the Mortgagee through a chapter 11 plan and that the Mortgagee's claim is a secured claim to extent of the agreed amount of $912,500.00.

Date:  April 6, 2018                                 _____
                                                           Frank J. Bailey
                                                           United States Bankruptcy Judge